Morton and wife vs. Peter Smith, &c.

---

CASE 36—PETITION EQUITY—JULY 5.

# Morton and wife vs. Peter Smith, &c.

**APPEAL FROM FRANKLIN CIRCUIT COURT.**

The profits of a fair, held by colored people of Frankfort, are required to be applied to the purposes for which the fair was held. Self-constituted trustees have no right to divert the fund from those purposes.

JOHN MASON BROWN,       For Appellants.

JOHN B. JAMES and
A. J. JAMES,       For Appellees.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT:

The preponderance of the evidence conduces to the conclusion, that, at the suggestion of some of the colored women of Frankfort, a preliminary meeting was held prior to the 25th of December, 1865, to arrange for the holding of a fair in the city, to commence on the evening of the day named, by the colored people; the object of which was, in part, to raise means to aid

in paying for a lot of ground in the city, or its vicinity, purchased from Mr. E. A. Dudley, on which to erect a school-house for the education of colored children; but as to what particular purpose the residue of the funds were to be applied, does not very clearly appear, as the evidence on that point is, to some extent, conflicting; but it was certainly benevolent and praiseworthy.

Of the few women who engaged in the enterprise, the appellant, Nancy Morton, was the most active, and unquestionably contributed most to its success. She rented the room in which it was held, and was, perhaps, the only colored person who could have gotten it. She alone was held responsible for the good conduct of those who attended the fair, and the protection of the house and property. She had the house put in order for the reception of the company, and on her credit the toys, and other articles vended at the fair, were obtained.

If appellees did anything more than to have the time and place for the holding of the fair announced at the church or churches, on several public occasions, until after the experiment of the first evening was made, and the liberal and zealous support with which it had met indemnified those who furnished the means of carrying it on and encouraged them to continue the fair on successive evenings, with the prospects of increased patronage and larger returns, this record does not disclose what it was.

And then, on the 26th of December, 1865, as is shown by the date on the paper which they caused to be drawn up, appellees held a meeting (whether any others were present or not does not appear), when they resolved that a fair be had, and carried on under the "*influence of the Baptist institution;* the proceeds of the fair to be appropriated and equally divided between the school and the ground on the hill."

Whether they assumed to act as trustees of the church or the school, is not explained; nor does it appear what they meant by the terms "*Baptist institution;*" but, according to their own resolves, one half the proceeds were to be applied to the benefit of *a school*—some school—and the other half to pay for the "hill property," as it is described; which, as may be understood from the evidence, referred to the ground purchased of Dudley for the erection of a school-house.

This meeting, on the 26th of December, was not authorized or sanctioned by those who had actually gotten up the fair, if, indeed, they were apprised of it until after it had been held; they certainly did not participate in it, nor did Nancy Morton ever agree that the proceeds should be controlled and disposed of by this self-constituted body of trustees.

This writing, which is exhibited by appellees as evidencing the objects of the fair, or the purposes to which the money arising therefrom was to be applied, does not, in terms, provide that any part was to be used in paying a debt for which appellees were bound. It is alleged in the pleadings, and there is some proof tending to show, that a part of the proceeds were to be appropriated in making a present as a testimonial of respect to, and appreciation of, the services rendered by Mr. Hawkins, in conducting the school in the city which he was at the head of. But however that may be, they all concur that a part of the profits of the fair was to be applied to pay for the hill property, as it is called; as yet, however, no part has been applied in that way.

Appellants aver, in their amended petition, that they do not claim the sum sued for (and they certainly have no right to claim any part of the funds raised by the fair) for their own use and benefit; but they pray the same

may be applied to the fulfillment of the original purpose and design of those who got up, managed, and successfully carried on said fair.

That purpose should be carried out, and appellants, as participants in the work, and as quasi trustees for the beneficiaries, or the schools which it was intended to benefit, have a right to maintain this action; to have the funds placed under the management of the chancellor, who should appoint a receiver to collect all the funds raised by the fair, after paying the necessary and actual expenses thereof, including all articles purchased and sold, house rent, &c., and order the payment of the residue—a part on the debt owing for the hill property, and also a part for the benefit of the Olive Free School; these applications of the funds to be made after the master shall have ascertained and reported the condition of the Olive Free School at the time of said fair, its present condition, whether it is still taught, and if not, when discontinued; and also ascertain and report the condition of the debt of the hill property, how much, if any thing, is due therefor; and if the debt has been paid, when, and by whom it was paid.    He should also ascertain and report what amount of money is in the hands of appellants, or either of them, arising from said fair, after paying all just demands and expenses incurred by them, or either of them; and whatever balance may remain, after the payment of all proper charges, they should be required to pay to the court's receiver, to be applied to the purposes and objects of the fair.

Appellees, as self-constituted trustees of an institution ideal, and certainly undefined, have shown no right, by virtue of the unsigned writing presented with their answer, to take possession of the funds which they have

gotten, and appropriate to the payment of debts, or a debt, for which they were bound.

Wherefore, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.